Graciela Williams dba Tri-Star Evictions
1412 17th Street, Suite A
Bakersfield, CA 93301
Phone: 661-325-2836

Plaintiff -In Pro Per

**FILED**

JUL 10 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACIELA WILLIAMS DBA TRI-STAR EVICTIONS )<br><br>Plaintiff, )<br><br>vs. )<br><br>QUARTERSPOT, INC A DELAWARE CORPORATION AND DLI ASSETS BRAVO, LLC A CALIFORNIA LIMITED LIABILITY COMPANY )<br><br>Defendants. ) | Case No.: 1: 19 CV  00936 LJO EPG<br><br>COMPLAINT FOR CIVIL ACTION BASED ON USURIOUS CONTRACT<br><br>Jury Trial: Yes |

## I.  THE PARTIES TO THIS COMPLAINT

A.  The Plaintiff: Graciela Williams dba Tr-Star Evictions, 1412 17th Street, Suite A, Bakersfield, CA 93301, (661) 325-2836.

B.  The Defendant: QuarterSpot, Inc a Delaware Corporation 333 7th Avenue, Suite # 1402, New York, NY 10001 and DLI Assets Bravo, LLC A California Limited Liability Company 550 North Brand Boulevard 20th Floor, Suite 2000, Glendale, CA 91203

/////

/////

COMPLAINT FOR CIVIL ACTION BASED
ON USURIOUS CONTRACT
1

Filed By Fax

II. BASIS FOR JURISDICTION

The basis for Federal Court jurisdiction in this matter falls under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds $91,000.00, exclusive of interest and cost.

Plaintiff residence in California and Defendant's QuarterSpot, Inc is a Delaware Corporation place of business is in the state of New York and DLI Assets Bravo, LLC a California Limited Liability Company that is in both California and Maryland state place of business. DLI Assets Bravo, LLC became part of this case because they purchased the loan from QuarterSpot, Inc The amount at stake in this matter is more than $91,000.00.

## VENUE

A. Diversity of Citizenship

B. Venue is proper under 28 U.S.C Section 1391 because, for venue purposes,

1. The Plaintiff is an individual, the Plaintiff, Graciela Williams, is a citizen of the State of California.

2. The Plaintiff, Graciela Williams dba Tri-Star Evictions (Sole-Proprietor) owns TriStar Eviction. The loan taken out from Defendant, QuarterSpot, Inc was taken out as Graciela Williams dba TriStar Evictions.

3. The Defendant, QuarterSpot, Inc and DLI Assets Bravo, LLC , is incorporated under the laws of the State of New York for QuarterSpot, Inc and DLI Assets Bravo, LLC in the State of California and QuarterSpot, Inc has its principal place of business in the State of New York, contract allow for Arbitration to take place in the State of Virginia. Which was purposely designed by the company QuarterSpot, Inc knowing that the laws are different. They also were aware that there was a good chance that a defendant in the event of a Breach of Contract issue

COMPLAINT FOR CIVIL ACTION BASED
ON USURIOUS CONTRACT
2

1   would arise mostly likely the Defendant would not be able to fly to Arlington Virginia for trial

2   hearings.

3        4. The amount in controversy is more than $91,000, not counting interest and costs of

4   court, because the Plaintiff took out a loan from Defendant, QuarterSpot, Inc in the amount of

5   $91,000. The interest rate on the loan was 39.62 % per month. On DLI Assets Bravo, LLC

6   Transferred the Note dated August 24,2017, assigning and transferring the Note from Direct

7   Lending Income Fund, LP to DLI Assets Bravo, LLC.

8

9       III. STATEMENT OF CLAIM

10       5. Plaintiff entered into the subject contract with Defendant to obtain a loan in the sum

11  of $91,000, to be used by Plaintiff primarily as a small business loan. Plaintiff's business was

12  moving locations and Plaintiff needed new computers and hired new employees. Plaintiff also

13  needed to pay off business debt and taxes that were owed by the business. The loan was not used

14  for personal, family or household purposes. Defendant took an off the top service fee of roughly

15  $7,280.00. Defendant then deposited the remaining $83,720.00 into Plaintiff's account. Plaintiff

16  made monthly payments for the first five months. Roughly a little over $50,211.40 was taken

17  from Plaintiff's account. Please see attached Exhibit # A and B

18      Plaintiff believes the loan was usurious and interest amount is not legal. The payments

19  made were in excess of the maximum rate of interest allowed by the California Constitution,

20  Article XV, Section I, and plaintiff is entitled to recover treble the amount paid pursuant to

21  Section3(a) of the 1919, page lxxxiii, as amended by Section 1 of the Chapter 784 of the

22  Statutes of 1970.

23       6. Plaintiff is entitled to recover the amount paid as money had and received.

7. An actual controversy has arisen and now exists between plaintiff and defendant, QuarterSpot, Inc and DLI Assets Bravo, LLC, concerning their respective rights and duties in that plaintiff contends that she is only obligated to pay defendant, QuarterSpot, Inc and DLI Assets Bravo, LLC, the principal amount of the loan without interest, and that the interest rate specified in the contract is usurious and should be declared null and void, whereas defendant, QuarterSpot, Inc and DLI Assets Bravo, LLC , disputed this contention and contends that plaintiff must continue paying both the principal amount and the specified interest rate.

8. Plaintiff desires a judicial determination of her rights and duties, and a declaration that the interest rate provisions of the contract are null and void, pursuant to the California Constitution, Article XV, Section 1 and Section 2 of the Statutes of 1919, page lxxxiii.

## Article XV

The California Constitution, article XV, section 1, states "No person, association, co-partnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action." Cal. Const. Art. 15, § 1. For non-consumer loans (i.e., loans not made primarily for personal, family or household purposes), the maximum interest rate that can be charged is the greater of (1) 10% per annum; or (2) 5% over the San Francisco Federal Reserve Bank's rate for advances made to member banks under Sections 13 and 13a of the Federal Reserve Act prevailing on the 25th day of the month prior to the earlier of the date of the loan contract or the date the loan was made. Cal. Const. Art. XV, § 1(2); *Stoneridge Parkway Partners v. MW Housing Partners III*, (2007) 153 CA4th 1373, 1379.

"Usury" is the charging of interest for "any loan or forbearance of money" in excess of the statutory maximum. *Ghirardo v. Antonioli* (1994) 8 C4th 791, 798; *Hall v. Beneficial Finance*

1  *Co.* (1981) 118 CA3d 652, 654.  If a loan is found to be usurious, the lender may be precluded

2  from recovering *any* interest and receive repayment of the principal sum only.  *Gibbo v. Berger*

3  (2004) 123 CA4th 396, 403; *Stephans v. Herman* (1964) 225 CA2d 671, 673.  Additionally, the

4  trial court may, in its discretion, assess treble damages against the lender (i.e., three times the

5  amount paid in violation of the usury limit).  See CC § 1916–3(a); *Burr v. Capital Reserve Corp.*

6  (1969) 71 C2d 983, 994, 80 CR 345, 352; *Gibbo,* supra, 123 CA4th at 404.  Charging a usurious

7  interest rate is also a criminal offense, punishable by a maximum five years' imprisonment.  CC

8  § 1916–3(b).

9

10  The lender has the benefit of a rebuttable presumption that a transaction is not usurious.  Thus, a

11  borrower claiming usury bears the burden of proving all of the essential elements of usury.

12  *Ghirardo, supra,* 8 C4th at 798–799; *De Guere v. Universal City Studios, Inc.* (1997) 56 CA4th

13  482, 509.  The essential elements of usury are: (1) The transaction must be a loan or forbearance;

14  (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be

15  absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a

16  usurious transaction.  *Ghirardo, supra.*

17

18  9.  A judicial declaration is necessary and appropriate at this time under the circumstances in

19  order that plaintiff may ascertain rights and duties under the contract.

20

21  //////

22  //////

23  /////

24  /////

25

WHEREFORE, plaintiff prays judgment against defendant as follows:

1. For the assessment of treble the damages against defendants, QuarterSpot, Inc and DLI Assets Bravo, LLC, in the sum of $55,000.00.

2. For a declaration that the interest rate provisions of the contract are null and void and of no force or affection.

3. For costs of suit herein incurred; and

4. for all such other relief as the court may deem proper.


DATE: ___JUL 0 9 2019___              *Graciela Williams*
                                      Graciela Williams dba Tri-Star Evictions,
                                      Plaintiff- In Pro-Per



## VERIFCATION

I, Graciela Williams, am the plaintiff in the above-entitled action. I have read the foregoing complaint and know that contents thereof. The same is true of my knowledge, except as to those matters which are therein alleged on information and belief, and as those matters, I believe it to be true.

I declare under penalty and perjury under the laws of the State of California that the foregoing is true and correct.


DATE: ___JUL 0 9 2019___              *Graciela Williams*
                                      Graciela Williams dba Tri-Star Evictions,
                                      Plaintiff- In Pro-Per



# BUSINESS LOAN AGREEMENT

This Business Loan Agreement, including the accompanying Bank Account Authorization Agreement, (the "Agreement") is made by and between QuarterSpot, Inc., (hereinafter "QuarterSpot", "we", "us", and "our"), the legal entity that executes this Agreement or on whose behalf this Agreement is executed (hereinafter, "you" "your" or "Borrower").

WHEREAS, QuarterSpot is the owner and operator of the website located at <www.quarterspot.com> (hereinafter the "Website");

WHEREAS, you wish to borrow from QuarterSpot, and your acceptance of this Agreement means that you agree to borrow and repay the business loan ("Loan") that you obtain from us in accordance with the terms of the Promissory Note and this Agreement;

WHEREAS, you agree to our Privacy Policy and Terms of Use, agree to transact with us electronically, and agree to resolve disputes through binding arbitration.

NOW THEREFORE, in consideration of the covenants, agreements, representations and warranties hereinafter set forth, and for other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

SECTION 1 –   CONDITIONAL OFFER. Based on QuarterSpot's analysis of the information you have provided or has been provided on your behalf, QuarterSpot prepared a conditional offer for you. This conditional offer is not a commitment to make a Loan on the terms selected by you. QuarterSpot's approval of your application and the terms of your conditional offer are subject to a final review of your completed application, credit report and background checks on you and the Owner(s), and review and verification of documents and information that you will be required to provide on the business and the Owner(s) in connection with your application. We reserve the right to verify any information that you submit in connection with your application by obtaining information from third parties prior to or after you sign this Agreement. If for any reason we determine that you do not qualify to borrow from QuarterSpot, we may cancel this Agreement in our sole and absolute discretion.

SECTION 2 –   LOAN LISTING.   QuarterSpot will post a loan listing with terms corresponding to your Loan on our Website for our Investors to review. The loan listing will expire 120 hours from its posting date; however, we reserve the right to cancel loan listings at any time within our complete discretion. Our posting of a loan listing does not guarantee that your loan will be funded.

SECTION 3  –   INVESTORS. Investors are registered QuarterSpot users who may review your loan listing and may choose to invest in your loan. YOU ACKNOWLEDGE THAT AN INVESTOR'S COMMITMENT TO INVEST IN A PORTION OR IN YOUR ENTIRE LOAN CONFERS NO RIGHTS TO YOU.  YOU FURTHER ACKNOWLEDGE THAT, IF AN INVESTOR CHOOSES TO INVEST IN YOUR LOAN, AS DEFINED IN SECTION 4, (A) QUARTERSPOT WILL BE THE SOLE MAKER AND CREDITOR OF YOUR LOAN, AND (B) IN THE EVENT OF DEFAULT THE LOAN MAY BE ASSIGNED BY QUARTERSPOT TO THE INVESTOR AND THE INVESTOR MAY THEREAFTER PURSUE ALL REMEDIES OF QUARTERSPOT.

SECTION 4 –   SUCCESSFUL FUNDING. Before your Loan can fund an investor must agree to:

a)   To invest in 100% of the Loan before the expiration of the loan listing;
b)   To invest in at least 50% of the Loan before the expiration of the loan listing; or
c)   To invest in at least $5,000 of the Loan at the expiration of the loan listing, and you choose to accept this lesser amount within 2 hours of expiration.

Original

Except as set forth in clause (c) above, in no event, will QuarterSpot be obligated to notify you of the date upon which your Loan may or will successfully fund.

SECTION 5 —   LOAN COMMITMENT.  SHOULD YOUR LOAN BE SUCCESSFULLY FUNDED, YOU COMMIT TO OBTAIN A LOAN FROM QUARTERSPOT ON THE TERMS SET FORTH IN THIS AGREEMENT AND AUTHORIZE US TO ISSUE A NOTE IN THE FORM ATTACHED AS EXHIBIT A ("NOTE") BETWEEN YOU AND QUARTERSPOT UNDER POWER OF ATTORNEY AS DESCRIBED BELOW.  YOU HAVE NO RIGHT TO RESCIND THIS AUTHORIZATION AFTER A LOAN LISTING HAS BEEN POSTED EXCEPT AS SET FORTH IN SECTION 4(c) ABOVE.  If your Loan is successfully funded, QuarterSpot will maintain the Note corresponding to your successfully funded Loan in electronic form and shall email you an electronic copy of your Note along with this Agreement.

SECTION 6 —   LIMITED POWER OF ATTORNEY.  As a condition to this Agreement, you hereby grant us a limited power of attorney and you hereby appoint QuarterSpot and/or our designees or assignees as your lawful and true agent and attorney-in-fact, with full and complete power of substitution and re-substitution, for you and in your name, stead and place, in any and all capacities, to execute and complete the Note with an equivalent Loan Amount (defined in SECTION 7) and terms selected by you during your review of the conditional offer, with the full authority and power to perform and do each and every thing and act necessary and requisite to be done in connection with such power, as fully to all purposes and intents as you could or might do in person ("Power of Attorney").  This Power of Attorney is limited to the purpose described herein and shall automatically expire upon the earlier of (A) the issuance and funding of your Note by QuarterSpot, (B) failure of your loan listing to be successfully funded, or (C) cancellation of your loan listing. By contacting QuarterSpot as specified in this Agreement, you may revoke this Power of Attorney at any time before your loan has been posted. Once a Note has been executed on your behalf by QuarterSpot acting as your attorney-in-fact, pursuant to this Agreement, it shall be deemed your valid and binding obligation. If you elect to revoke this Power of Attorney before we publish your loan listing, this Power of Attorney will be cancelled. Further, in QuarterSpot's sole and unlimited discretion, you may be prohibited from participating as a Borrower on our Website in the future.

SECTION 7 —   PLATFORM FEE.  If your Loan is successfully funded, you agree to pay a one-time non-refundable Platform Fee in the amount set forth in your Note. This fee will be deducted from your loan proceeds, so the Disbursement Amount will be less than the full amount of your issued Loan ("Loan Amount"). You hereby acknowledge that the Platform Fee will be considered part of your Loan Amount and is subject to the accrual of interest. The Platform Fee consists of a service fee for providing and operating the QuarterSpot loan platform and may include an acquisition fee to cover the costs incurred by QuarterSpot for third parties arranging the Loan between QuarterSpot and the borrower.

SECTION 8 —   LOAN DISBURSEMENT.  If your loan is successfully funded, you authorize us to disburse your loan proceeds ("Disbursement Amount"), by electronic transfer to the business operating account(s) approved by QuarterSpot ("Payment Account") as provided in the accompanying Bank Account Authorization (Exhibit B).

SECTION 9 —   LOAN PAYMENT.  You authorize us to initiate an electronic payment request to your Payment Account where you receive payments for goods and services sold or provided by you for any amount due under your Loan in accordance with the payment schedule of your Note ("Payment Schedule"), as provided in the Bank Account Authorization (Exhibit B).

SECTION 10 —   ALTERNATIVE PAYMENT METHODS. If you know of any reason that we will be unable to obtain any payment due in accordance with the Payment Schedule, then you must promptly restore sufficient funds to your Payment Account, make the missed payment(s) by electronic transfer or, if offered, by other means.  If QuarterSpot elects to receive payments by mail, you agree to send such payments to QuarterSpot, Suite 330, 2751 Prosperity Avenue Fairfax, Virginia.

SECTION 11 —   OTHER FEES.

a) *Returned Payment Fee*: A Returned Payment Fee in the amount of $25 may be assessed if an electronic payment is made on your loan that is returned as unpaid, declined or dishonored for any reason. If assessed, this fee is

Business Loan Agreement — Version 11082016                                                     2 | Page

Original

immediately due and payable, and may be collected using electronic transfers initiated by us. You acknowledge that your bank may charge a fee in addition to the Returned Payment Fee.

b) *Late Fee:* A Late Fee in the amount of $10 may be assessed if an electronic payment is not received by us according to the Payment Schedule. If assessed, this fee is immediately due and payable, and may be collected in accordance with SECTION 12 and SECTION 13. The maximum amount of Late Fees that may be assessed per month is $40.

c) *Wire Transfer Fee (optional):* A Wire Fee of $30 to receive a wire transfer of the Disbursement Amount. This fee will be deducted from the loan proceeds. You hereby acknowledge that the Wire Fee will be considered part of the Loan Amount and is subject to the accrual of interest. Additionally, a Wire Fee in the amount of $30 is assessed if a wire transfer payment is made by you.

SECTION 12 – SECURITY INTEREST. In the event a Note is executed on your behalf under a Power of Attorney, you hereby agree to grant QuarterSpot a continuing security interest in and to the "Collateral" as described below to secure payment and performance of the Note. The Collateral includes the following property that you now own or shall acquire or create immediately upon the acquisition or creation thereof: (a) all tangible and intangible property of Borrower, including, but not limited to all cash and cash equivalents, deposit accounts, credit card receivables, chattel paper, documents, equipment, general intangibles, instruments, inventory, equipment, investment property (including certificated and uncertificated securities, securities accounts, securities entitlements, commodity contracts and commodity accounts), letter of credit rights, commercial tort claims and as extracted collateral (as those terms are defined in Article 9 of the Uniform Commercial Code ("UCC") in effect from time to time in the State of Virginia); (b) all patents, patent applications, trademarks, trade names, service marks, logos, copyrights, and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and U.S. Copyright Office and all renewals, reissues and extensions thereof (collectively, "IP"), together with any written agreement granting any right to use any IP; and (c) all accessions, attachments, accessories, parts, supplies and replacements, products, proceeds and collections with respect to the items described in (a) and (b) above, as those terms are defined in Article 9 of the UCC and all records and data relating thereto.

SECTION 13 – FINANCING STATEMENTS. In the event a loan is issued to you, you hereby agree that QuarterSpot and/or a designated representative may file any financing statement, lien entry form or other document we require in order to perfect, amend or continue our security interest in the Collateral and you agree to cooperate with us and/or our designated representative as may be reasonably necessary to accomplish said filing and to perfect our security interest in the Collateral. In this Agreement "designated representative" means any entity or individual that is designated by us to serve in such capacity.

SECTION 14 – INSPECTION. In the event a Loan is issued to you, you hereby agree that QuarterSpot and its designated representatives shall have the right to examine the Collateral and the interior and exterior of your place of business during your normal business hours to determine whether your business is operational. During an examination, QuarterSpot's designated representatives may photograph your business' interior and exterior. You grant QuarterSpot the irrevocable and permanent right to display and share any photograph or testimonial taken in all forms and media with the general public. You agree to release QuarterSpot from any claims that may arise from the use of any photograph or testimonial, including any claims of defamation, invasion of privacy or infringement of moral rights, copyright or rights of publicity.

SECTION 15 – OTHER ACKNOWLEDGEMENTS AND COVENANTS BY YOU.

a) You acknowledge and agree that we may rely without independent verification on the accuracy, authenticity, and completeness of all information you provide to us;

b) You agree that if your Loan is successfully funded, you will repay the Loan in accordance with the agreed upon terms specified under this Agreement and Exhibit A attached hereto.

Original

c) You agree not to materially change the type of the business that you conduct from the type of business originally disclosed to QuarterSpot in connection with this Agreement and to conduct your business substantially in accordance with past practices;

d) You will not receive any form of commercial financing, including but not limited to a business loan or merchant cash advance, other than from QuarterSpot for a period of 30 days following the issuance of your Loan;

e) You agree to notify us promptly if there is an account change, with regard to any Payment Account provided to us, and agree to provide us with up-to-date account information;

f) You agree to make all customer deposits that you receive for goods and services sold or provided by you ("Customer Deposits") and other bank deposits only in the Payment Account and you agree not to open a new account other than the Payment Account to which Customer Deposits will be received and not to take any action to cause Customer Deposits or payments of any nature to be delivered to any account other than the Payment Account;

g) You agree to maintain sufficient funds in your Payment Account to cover any amount due in accordance with the Payment Schedule of your Loan;

h) You agree not to take any intentional action that would substantially impair or reduce the ability of the Borrower to satisfy its obligations under this Agreement without our prior written permission;

i) You agree to notify us if you know of any reason that we will be unable to process or receive payment in accordance with the Payment Schedule of your Loan;

j) You agree not to challenge the enforceability or validity of this Agreement, in whole or in part;

k) While Borrower has unsatisfied indebtedness to QuarterSpot, you agree to notify QuarterSpot prior to (i) consolidating or merging into or with any other business entity; (ii) changing your place of business, name or, if more than one, chief executive office, organizational identification number(s), mailing address; or (iii) changing your entity's organization type, legal structure, and jurisdiction of your organization. If Borrower does not have an organizational identification number and obtains one at a later point in time, you shall notify QuarterSpot of such identification number immediately; and

l) You agree to comply with all laws, statutes, regulations and ordinances pertaining to the conduct of Borrower's business and promise to hold QuarterSpot harmless from any damages, liabilities, costs, expenses (including attorney fees) or other harm arising out of any violation thereof.

## SECTION 16 – OTHER, REPRESENTATIONS AND WARRANTIES BY YOU.

a) You have not: (i) made any false, inaccurate, incomplete, misleading or deceptive statements or omissions of fact; (ii) misrepresented your identity or the identity of your business, or described, presented or portrayed yourself or the business in a fraudulent manner; or (iii) represented yourself to any person, as a representative, employee, or agent of QuarterSpot, or purported to speak to any person on our behalf;

b) You have not received nor plan to receive any form of commercial financing other than from QuarterSpot, including but not limited to a business loan or merchant cash advance, that has not been originally disclosed in writing to us in connection with this Agreement;

c) You have no present intention to close or cease operating your business, in whole or in part, temporarily or permanently;

d) You are solvent and not contemplating any insolvency or bankruptcy proceeding;

e) As of the date of this Agreement, no eviction or foreclosure is pending or threatened against Borrower;

f) The execution, delivery and performance of the obligations under this Agreement, all of which have been duly authorized, and any and all other documents, contracts and agreements agreed to and/or executed in connection herewith, are within your full power and authority, are not in contravention of applicable law, have been authorized, do not contravene your Bylaws, operating agreement, charter or other organization documents, or any agreement, contract, indenture or other undertaking made by Borrower; It is not necessary for QuarterSpot to inquire into your powers or the officers, directors, agents, acting or purporting to act in its behalf and any Agreements made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder;

Original

g) The exact legal name of the Borrower is set forth in the loan application;

h) The loan application accurately reflects the Borrower's principal office and the location where you retain, access and have available your records relating to your accounts, property and contract rights;

i) You will comply with all rules, regulations, statutes, laws and ordinances relating to you and your business;

j) Borrower is in good standing and fully licensed to do business in every state in which it is conducting business, and agrees that it shall remain so during the term of this Agreement except where the failure to comply cannot reasonably be expected to have a material adverse impact on Borrower's business, property, financial condition of the value or ownership rights in or to the Collateral;

k) Borrower is in good standing, is duly organized, is validly existing and is licensed under the laws of its state of incorporation, and shall remain so during the term of this Agreement;

l) Any and all capital stock issued and outstanding by Borrower is and was properly made;

m) All of Borrower's records and books are up-to-date and accurate, and shall be maintained in such a state during the term of this Agreement;

n) All of Borrower's organizational documents and papers, and all amendments to such documents and papers, have been properly and duly filed and are in good and proper order;

o) Borrower is in compliance with its Bylaws, operating agreement, organizational documents, charter, applicable laws, rules, regulations, ordinances, contracts, agreements, covenants or other restrictions by which it is bound, other than those being contested in good faith or where the failure to comply cannot reasonably be expected to have a material adverse impact on Borrower's business, property, financial condition of the value or ownership rights in or to the Collateral;

p) The execution, delivery and performance of this Agreement and any other document executed in connection herewith, is within the Borrower's powers and has been duly authorized;

q) Borrower is not subject to any legal, corporate or chartered based restriction, or any award, order, decree, judgment rule, regulation, law, contract or agreement that could reasonably be expected to have a material adverse impact on the Borrower's business, prospects, property or financial condition of the value or ownership rights in or to the Collateral; and

r) The aggregate ownership percentage of any guarantors is greater than or equal to fifty percent (50%) of the Borrower's business.

SECTION 17 — DEFAULT AND TERMINATION. You will be deemed in default on your loan (each, an "Event of Default") if:

a) We are unable to collect on or not receive any scheduled payment within three (3) days after its due date and we have not agreed to an alternate Payment Schedule for you;

b) You violate any term, covenant or condition of this Agreement;

c) Any representation, warranty statement made or furnished to us by you shall prove to have been incorrect, incomplete, false or misleading in any material respect when made;

d) Any financial information provided by you is intentionally false or misleading;

e) You admit in writing your inability to pay your debts, or if you make a general assignment for the benefit of creditors;

f) Any proceeding shall be instituted by or against you seeking to adjudicate you bankrupt or insolvent that is not dismissed within ninety (90) days;

g) You liquidate, terminate, dissolve, suspend or wind down your business;

h) Your ability to perform your obligations under this Agreement is threatened or put in jeopardy, including but not limited to a circumstance where you are in default under any agreement, including a security agreement, in favor of any other party to whom you are indebted;

i) You deny in writing that this Agreement or any obligation of performance and liability hereunder is binding; or you contest in writing the enforceability or validity of this Agreement or any guarantee of performance in any forum; you default in your obligation to guarantee performance of this Agreement, or any guaranty of performance ceases to be in full force and effect or is declared to be null and void;

Original

j)  If any managing member dies, where Borrower is a limited liability company; if any general partner or partner dies, where Borrower is a partnership; in the event that Borrower is any other form of business entity, any person(s) that directly or indirectly controlling 10% or more of the ownership interests of such entity dies;

k)  If any creditor tries to take any of your property on or in which we have a lien or security interest;

l)  Loan proceeds are used for personal, family, or household purposes or any illegal activity;

m)  It is hereby agreed that Investor's assigns or representatives may pursue all of Investor's remedies hereunder and under the terms of the Note in the Event of Default; and

n)  *Negotiated Borrower Agreement. Borrower acknowledges that Borrower was represented by legal counsel, or, if not, was given the opportunity to do so, but freely and knowingly chose not to be so represented.*

**SECTION 18 – RIGHTS AND REMEDIES UPON DEFAULT.** Subject to applicable law, if an Event of Default occurs under this Agreement, at any time thereafter, we may exercise any one or more of the following rights and remedies:

1.  *Accelerate Indebtedness*: We may declare the Loan Amount immediately due and payable, without notice of any kind to you.

2.  *Debit Amounts Due:* We may debit from the Payment Account all payments due and payable.

3.  *Remedy Election*: Except as limited by applicable law, all of QuarterSpot's remedies and rights, whether documented in this Agreement any related documents, or any other writing, shall be cumulative and may be exercised concurrently or singularly. Any election by QuarterSpot to pursue a particular remedy or recourse at any time shall not be deemed to exclude or limit pursuit of any other remedy or recourse at any other time, and any election or selection to take action or make expenditures to perform your obligation under the Agreement, after any failure to perform by you, shall not affect or impact QuarterSpot's right to declare a default and exercise any remedies or recourse available to QuarterSpot.

**SECTION 19 – LOAN SERVICING.** You acknowledge and agree that QuarterSpot, its third party agent(s), or assign(s) shall administer and collect on your loans. You agree that we may, in our sole discretion, delegate servicing of your loan or assign your loan and Note to another party.

**SECTION 20 – FINANCIAL INFORMATION AND REEVALUATION OF CREDIT.** You hereby authorize us to obtain financial data, background checks and credit reports, including consumer credit reports, in your name and the name of any owner from third parties at any time in connection with your loan application and, if your Loan is issued, for any update, renewal, extension of credit or other lawful purpose thereon. Upon your request, QuarterSpot shall inform you or the owner of the credit bureau's name and address from which QuarterSpot obtained a credit report. You and each owner agree to submit current financial information or a new loan application, at any time upon QuarterSpot's request.

**SECTION 21 – COLLECTION & REPORTING OF DELINQUENT LOANS.** We reserve the right to report loan payment delinquencies at or in excess of thirty (30) days to one or more commercial reporting agencies in accordance with applicable law. You also agree that we may release information to comply with governmental reporting or legal process that we believe may be required, whether or not such is in fact required, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss. You agree to pay all costs of collecting any delinquent payments, including reasonable attorneys' fees, as permitted by applicable law.

**SECTION 22 – COSTS AND ATTORNEYS' FEES.** Except as limited by applicable law, you agree to pay QuarterSpot on demand any and all expenses, including, but not limited to, collections, reasonable attorneys' fees, filing fees, document fees and all other expenses or any kind or nature which may be incurred by QuarterSpot to enforce or obtain payment of the Loan.

**SECTION 23 – INDEMNIFICATION.** Except for QuarterSpot's gross negligence or willful misconduct, you agree to defend, indemnify and hold QuarterSpot harmless from any liabilities, damages, costs, expenses (including reasonable attorneys'

Business Loan Agreement — Version 11082016

Original

fees) or harm arising out of or relating to any violation or alleged violation by you of this Agreement. This section shall survive termination of this Agreement.

SECTION 24 – INTEREST AND FEE REFUNDS. If your Loan is subject to a law that sets maximum charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Agreement exceed the permitted limits, then (i) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (ii) any sums already collected from you that exceed the permitted limits will be refunded or credited to you.

SECTION 25 – TELEPHONE COMMUNICATION. You hereby consent to receiving calls and messages, including auto-dialed and pre-recorded message calls and SMS messages (including text messages) from QuarterSpot, its affiliates, designated representatives, marketing partners, agents and others calling at QuarterSpot's request or on its behalf, at any telephone numbers for you or any owner in QuarterSpot's possession. You hereby consent to any monitoring or recording of our calls with you.

SECTION 26 – CONSENT FOR ELECTRONIC SIGNATURES, RECORDS, AND DISCLOSURES ("E-Consent").

a) You are submitting a request for online commercial financial services from us. To provide these services, we need your consent to using and accepting electronic signatures, records, and disclosures ("EConsent"). This E-Consent notifies you of your rights when receiving disclosures, notices and information from us. By clicking "Sign-up," "Agree," "Next," or "Submit," or other links assenting to our terms, you acknowledge you received this E-Consent and that you consent to using electronic signatures, records, and disclosures. Additionally, by clicking "Sign-up," "Agree," "Next," or "Submit," or other links assenting to our terms, you consent to conduct transactions by using electronic disclosures, electronic records, and contract documents ("Disclosures"). You may obtain any Disclosures in paper copy by printing a paper copy. You may also mail us a written request to our address provided above, and we will provide paper copies at no charge. We will retain all Disclosures as applicable law requires. This E-Consent applies to all interactions you concerning you and us. By exercising this E-Consent, we will process your information and interact during all online interactions with you electronically. We will also send you notices electronically related to our interactions and transactions. You also hereby agree that this consent will apply to you and all interactions you may have with third parties we refer you to, including any potential third-parties such as collection agencies or verification companies. This consent will apply to those interactions until and unless you and such third-party agree to a subsequent electronic consent agreement. Before you decide to do business electronically with us you should consider whether you have the required hardware and software capabilities described below. To access and retain the Disclosures electronically, you will need to use the following computer software and hardware: A PC or MAC compatible computer or other device capable of accessing the Internet and an Internet Browser software program that supports at least 128 bit encryption, such as Google® Chrome. To read some documents, you may need a PDF file reader like Adobe® Acrobat Reader Xpdf® or Foxit®. If these requirements change while you are maintaining an active relationship with us, and the change creates a material risk that you may not be able to receive Disclosures electronically, we will notify you of these changes. You will need a printer or a long-term storage device, such as your computer's disk drive, to retain a copy of the Disclosures for future reference. You may send us your written questions regarding the hardware and software requirements by mail to our address above. You may withdraw this E-Consent at any time and at no charge. However, if you withdraw this E-Consent before receiving online commercial financial services, this will prevent you from obtaining online commercial financial services from us. If at any time you wish to withdraw this E-Consent, you can send us your written request by mail to our address above, with the details of such request. If you decide to withdraw this E-Consent, the legal effectiveness, validity, and enforceability of prior electronic Disclosures will not be affected. You should keep us informed of any change in your electronic address or mailing address. You may update such information by emailing support@quarterspot.com and providing the updated information. You may also send us your written update by mail to our address above.

b) BY CLICKING "SIGN-UP," "AGREE," "NEXT," OR "SUBMIT," OR OTHER LINKS ASSENTING TO OUR TERMS YOU ACKNOWLEDGE THAT YOU CAN ACCESS THE DISCLOSURES IN THE DESIGNATED FORMATS DESCRIBED ABOVE. Once

Original

you give your consent, you can access these documents on our Website. BY CLICKING "SIGN-UP," "I AGREE," "NEXT," OR "SUBMIT," OR OTHER LINKS ASSENTING TO OUR TERMS YOU ACKNOWLEDGE YOU HAVE READ THIS INFORMATION ABOUT ELECTRONIC SIGNATURES, RECORDS, DISCLOSURES, AND DOING BUSINESS ELECTRONICALLY. YOU CONSENT TO USING ELECTRONIC SIGNATURES, HAVING ALL DISCLOSURES PROVIDED OR MADE AVAILABLE TO YOU IN ELECTRONIC FORM AND TO DOING BUSINESS WITH US ELECTRONICALLY. YOU ACKNOWLEDGE THAT YOU MAY REQUEST A PAPER COPY OF THE ELECTRONIC RECORDS AND DISCLOSURES, WHICH WE WILL PROVIDE TO YOU AT NO CHARGE. IF YOU REFRAIN FROM PROCEEDING THEN YOU NEITHER WISH TO USE ELECTRONIC SIGNATURES NOR CONDUCT THIS TRANSACTION ELECTRONICALLY. YOU ALSO ACKNOWLEDGE THAT YOUR CONSENT TO ELECTRONIC DISCLOSURES IS REQUIRED TO RECEIVE ONLINE COMMERCIAL FINANCIAL SERVICES FROM US OVER THE INTERNET.

SECTION 27 – NO WARRANTIES. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, QUARTERSPOT MAKES NO REPRESENTATIONS OR WARRANTIES TO BORROWER, INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

SECTION 28 – LIMITATION ON LIABILITY. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, QUARTERSPOT MAKES NO REPRESENTATIONS OR WARRANTIES TO BORROWER REGARDING THE EFFECT THAT THE AGREEMENT MAY HAVE UPON BORROWER'S FOREIGN, FEDERAL, STATE OR LOCAL TAX LIABILITY.

SECTION 29 – ARBITRATION. The parties agree that any claim, allegation or dispute arising out of or relating to this Agreement, including without limitation, and claim, allegation or dispute regarding the terms, scope, interpretation, construction, performance, breach, termination or enforceability of this Agreement, may be, at the election of either party, submitted to and resolved by mandatory binding arbitration, to take place in the State of Virginia, to take place with a reasonable time after the making of such a demand by a party, with the period not to exceed ninety (90) days after request by the requesting party. Arbitration under this Agreement shall take place before and be administered by JAMS. Except as limited by this Agreement, the proceeding shall be conducted under the Expedited Procedures of JAMS' rules and procedures. The arbitrator presiding over the proceeding shall be selected under JAMS' procedures, and shall base its determinations and awards under Virginia law. Any award issued by the arbitration may be entered and enforced in any court having jurisdiction in accordance with SECTION 38 of this Agreement. The costs associated with the arbitration charged by JAMS shall be split evenly among the parties to the arbitration, although QuarterSpot will consider a good faith request by you for QuarterSpot to pay the costs of arbitration. Arbitration may only be pursued in an individual capacity, not as a class or representative member of more than one individual. The arbitrator shall not have the power or be authorized to consolidate more than one individual or entity's claim in arbitration proceeding with any other person or entity's other arbitration proceeding, and may not otherwise authorize or preside over any claim purporting to represent a class or more than one individual or entity. This arbitration section is governed by the Federal Arbitration Act, 9 U.S.C. § 1-16.

SECTION 30 – ADDITIONAL ACKNOWLEDGMENTS. By electronically signing, you acknowledge and agree to the following:

a) CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

b) The Loan will accrue interest on a simple interest basis. Interest will be calculated daily on the unpaid principal until the full amount of principal has been paid. There are no unearned finance charges.

c) Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

d) NOTICE: (1) Do not sign this paper before you read it. (2) You are entitled to a copy of this paper. (3) You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

SECTION 31 — VIRGINIA GOVERNING LAW, CHOICE OF VIRGINIA FORUM. Our relationship, including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with, applicable federal law and (to the extent not preempted by federal law) Virginia law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be governed by such laws. You understand and agree that (i) QuarterSpot is located in Virginia, (ii) QuarterSpot makes all credit decisions from QuarterSpot's office in Virginia, (iii) Loans are made in Virginia (that is, no binding contract will be formed until we receive and accept your signed Agreement in Virginia) (iv) QuarterSpot will make Loan Disbursements from its bank in Virginia and (v) all Loan Payments will be made to QuarterSpot's bank in Virginia. Borrower hereby expressly consents to Virginia law and forum. Borrower acknowledges that in the event of litigation arising under this Agreement, that litigation in Virginia spares the Borrower the costs of paying for transporting Virginia evidence elsewhere. Borrower acknowledges that the signing of these terms is a culmination of a series of acts carried on in Virginia. Borrower agrees that Virginia is the most convenient location to resolve issues as it relates to this Agreement. Unless prohibited by applicable law, this Agreement shall be governed by, construed, applied and enforced in accordance with the laws of the State of Virginia without regard to principles of conflicts of law. Any arbitration as provided for in this Agreement will take place in the state of Virginia.

SECTION 32 — ASSIGNMENT. You hereby agree that we may without notice to or consent by you, sell, assign or transfer assign all of our right, title and interest in the Loan and this Agreement.

SECTION 33 — NOTICES; CUSTOMER SERVICE CONTACT INFORMATION. All notices and other communications to you hereunder may be given by email to your registered email address or posted on the Website, and shall be deemed to have been duly given and effective upon confirmed transmission. You acknowledge that you have sole access to such email account and your area on the Website and that communications from us may contain sensitive, confidential, and collections-related communications. If you wish to change an email address or registered business address and telephone number, you must notify QuarterSpot of the change by (i) sending an email to support@QuarterSpot.com, (ii) calling 1-888-718-SPOT or (iii) by mail them at Suite 330, 2231 Prosperity Avenue Fairfax, Virginia 22031.

SECTION 34 — WAIVER OF NOTICES AND OTHER TERMS. Except for any notices provided for in this Agreement and to the extent prohibited by applicable by law, you hereby agree to waive demand, notice of nonpayment, notice of intention to accelerate, notice of acceleration, presentment, protest, notice of dishonor and notice of protest. QuarterSpot may modify, renew, or extend this Agreement, at any time or multiple times, without notice to or approval by you or any guarantor.

SECTION 35 — RECORDKEEPING. Except as required by law, QuarterSpot shall have no obligation to maintain any electronic records or documents provided by you or any guarantor in connection with this Agreement.

SECTION 36 — MISCELLANEOUS. The parties acknowledge that there are no third party beneficiaries to this Agreement. You may not assign, transfer, sublicense or otherwise delegate your rights or obligations under this Agreement to another person without QuarterSpot's prior written consent. Any such assignment, transfer, sublicense or delegation in violation of this SECTION 36 shall be null and void.

SECTION 37 — COMMERCIAL / BUSINESS PURPOSE LOAN CERTIFICATION. BY SIGNING BELOW, YOU CERTIFY THAT THIS LOAN IS BEING MADE TO YOU, A BUSINESS, FOR BUSINESS PURPOSES. THE PROCEEDS WILL NOT BE USED FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES. YOU ACKNOWLEDGE THAT THE ENTITY OBTAINING THIS LOAN HAS ENGAGED IN LAWFUL, ONGOING BUSINESS AND WAS NOT FORMED FOR THE PURPOSE OF OBTAINING THIS CREDIT.

Original

YOU ACKNOWLEDGE AND AGREE TO SUBMIT ANY ADDITIONAL CERTIFICATION, AFFIDAVIT, ACKNOWLEDGMENT, OR FURTHER SUBSTANTIATION WE MAY REQUEST REGARDING THE BUSINESS PURPOSE OF THIS EXTENSION OF CREDIT. You understand that we will be unable to verify how you will actually use the loan proceeds. However, you agree that its breach of the provisions of this section will not affect our right to (a) enforce your promise to pay all amounts owed under this Agreement, regardless of the purpose for or how the loan proceeds are in fact used or (b) use any remedy legally available to QuarterSpot, even if that remedy would not have been available had the Loan been made by us for consumer purposes;

SECTION 38 – OWNER CERTIFICATION. By executing this Agreement, the owner is certifying that the owner (i) is an owner of the Borrower, (ii) is authorized to execute this Agreement on the Borrower's behalf and (iii) is executing this Agreement on behalf of the Borrower.

SECTION 39 – ENTIRE AGREEMENT. All Exhibits attached to this Agreement and the Note are hereby incorporated into and made a part of this Agreement. This Agreement is the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior written or verbal communications or instruments relating thereto.

IN WITNESS WHEREOF, the Borrower has duly executed this Agreement as of the date first below written.



Borrower: __TRI-STAR EVICTIONS__                                      Original

Owner Name: _____Graciela  Williams_____      Owner Name: _____

Date: _____May 25, 2017_____      Date: _____

Signature: _Graciela Williams_                          Signature: _____
                (Authorized Signor/Owner)                          (Authorized Signor/Owner)


Owner Name: _____      Owner Name: _____

Date: _____      Date: _____

Signature: _____      Signature: _____
                (Authorized Signor/Owner)                          (Authorized Signor/Owner)

Owner Name: _____      Owner Name: _____

Date: _____      Date: _____

Signature: _____      Signature: _____
                (Authorized Signor/Owner)                          (Authorized Signor/Owner)

Original

# EXHIBIT A

## NON-NEGOTIABLE PROMISSORY NOTE 1

### (TO BE EXECUTED ELECTRONICALLY PURSUANT TO SECTION 26 OF THE BUSINESS LOAN AGREEMENT)

For value received, I ("Borrower," "you") promise to pay to the order of QuarterSpot or any subsequent holder (collectively, "Lender," "us") of this Promissory Note ("Note"), the principal ("Principal" or "Loan Amount") of _____Ninety-One Thousand Dollars_____ ($ 91,000.00 ) with interest as set forth below.

Issue Date: _____5/26/2017_____

Term: ___540___ Calendar Days. On the date of your final required payment (the "Maturity Date"), any unpaid balance under this Note will be payable in full.

Loan Amount: $ 91,000.00

Interest Rate: 39.62 %

Total Interest: $ 30,047.85 (estimate). This Note is a fully amortizing loan that bears simple interest during each calendar day from its Issue Date until the final day of its stated term, subject to prepayment as set forth herein. Interest is calculated on a daily basis upon the unpaid balance with each day representing 1/360th of a year. Your Total Interest amount will be more if you pay late and less if you pay early.

Payment Schedule: (_____Weekly_____) This Note must be repaid according to its payment schedule, subject to prepayment as set forth herein. A fixed payment of _____One Thousand Five Hundred and Sixty-Nine Dollars and Ten Cents_____ ($ 1,569.10 ) representing principal and interest will become due according to the Note's payment schedule.

Borrower Agreement: This Note is delivered by Borrower pursuant to that certain Business Loan Agreement dated as of _____May 25, 2017_____ between the Borrower and the Lender as the same may from time to time be amended, restated, modified, supplemented and/or replaced (the "Borrower Agreement").

Fees: Upon execution of this Note, the Borrower will be responsible for all fees identified in the Borrower Agreement:

Note Repayments: All payments on this Note shall be made in immediately available lawful United States money. All payments hereunder are to be first applied to the payment of expenses and, fees, then to the unpaid Loan Amount with interest; provided, however, that after an Event of Default (as defined in the Borrower Agreement), payments will be applied to your obligations as determined by QuarterSpot, in its sole discretion.

Prepayments and Partial Payments: Borrower may make any payment in advance of the Payment Schedule, in whole or in part, without penalty or premium at any time. Any partial prepayment is to be applied first to expenses for which the Borrower is liable hereunder and then to any unpaid amount due and payable under the Note at the time of prepayment. Unless the Borrower's prepayment satisfies all amounts due under the Note at the time it is received, any excess funds will be held and applied to the Borrower's indebtedness to QuarterSpot at the time the Borrower's obligations become due and payable in accordance with the payment schedule of this, or any other Note. Interest will

Business Loan Agreement -- Version 11082016

1| Page

Original

continue to accrue at the same rate regardless of prepayment until either (i) payment of the Note is received in full or (ii) the final calendar day of the Note's stated Term. Partial prepayment of this Note does not relieve the Borrower of its obligation to pay the remaining balance due under this Note prior to the final calendar day of the Term. We may accept late payments or partial payments, even though marked "paid in full", without losing any rights under this Note.

Security Interest: Upon execution of this Note, the Borrower grants QuarterSpot a continuing security interest in and to any and all "Collateral" as described in the Borrower Agreement to secure payment and performance of all debts, liabilities and obligations of you to us hereunder.

Event of Default: If an Event of Default (as defined in the Borrower Agreement) occurs due to Borrower's failure to make a payment when due, interest will continue to accrue at the current interest rate on the unpaid balance of the loan.

Miscellaneous: This is a non-negotiable Note. Notwithstanding the foregoing, we have the right to assign this Note, including without limitation, without any notice to the Borrower, advance or otherwise. The Borrower does not have the right and you may not assign this Note without QuarterSpot's prior written consent. This Note inures to the successors, heirs, representatives and permitted assigns of the Borrower and QuarterSpot.

The Borrower hereby waives notice of non-payment, demand, protest and all other notices or demands whatsoever, and the Borrower hereby consents that, without notice to and without releasing any party's liability, we may, in whole or in part, from time to time, extend, modify, change, amend, accelerate, compromise, settle or release the obligations evidenced by this Note.

Any changes to this Note must be in writing signed by the Borrower and us. Notices will be mailed electronically.

Controlling Law: Our relationship, including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with, applicable federal law and (to the extent not preempted by federal law) Virginia law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. You understand and agree that (i) we are located in Virginia, (ii) we make all credit decisions from our office in Virginia, (iii) the Loan is made in Virginia (that is, no binding contract will be formed until we receive and accept your signed Agreement in Virginia) and (iv) your payments are not accepted until received by us in Virginia. Borrower further acknowledges that: (i) Borrower's loan request was received at our office in Arlington, Virginia; (ii) we completed our underwriting process resulting in this transaction at our office in Arlington, Virginia; (iii) all agreements between you and us will be effective on the only after received by us at our office in Arlington, Virginia; (iv) we provide proceeds to Borrower from a bank account in Virginia; (v) we process all transactions from Virginia; (vi) we service the transaction from the State of Virginia; and (vii) all payments are deemed made when received by us at our office in Arlington, Virginia. Borrower hereby expressly consents to Virginia law and forum. Borrower acknowledges that in the event of litigation arising under this Note, that litigation in Virginia spares the Borrower the costs of paying for transporting Virginia evidence elsewhere. Borrower acknowledges that the signing of these terms is a culmination of a series of acts carried on in Virginia. Borrower agrees that Virginia is the most convenient location to stand suit, as it relates to this Note. Unless prohibited by applicable law, this Note shall be governed by, construed, applied and enforced in accordance with the laws of the State of Virginia without regard to principles of conflicts of law. Any arbitration as provided for in this Note will take place in the state of Virginia.

Business Loan Agreement -- Version 11082016                                                                 2| Page

Original

Use of Proceeds: Borrower certifies, acknowledges and understands that the loan proceeds will be used solely for the business purposes that the Borrower has represented to us in connection with your loan request, and such business purposes are hereby incorporated by reference.

Borrower: _____ TRI-STAR EVICTIONS _____

By: _____ QuarterSpot, Inc. on behalf of Borrower _____

Date: _____ May 25, 2017 _____



PLAINTIFF'S EXHIBIT 

## ALLONGE TO PROMISSORY NOTE

This Allonge is attached to and forms a part of that certain Promissory Note dated May 26, 2017, in the original principal amount of Ninety-One Thousand Dollars ($91,000.00), made by TRI-STAR EVICTIONS, payable to the order of QUARTERSPOT INC., a Delaware corporation ("*Lender*").

Pay to the order of DIRECT LENDING INCOME FUND, LP, its successors, participants and assigns, without recourse and without representation or warranty, expressed or implied by Lender.

Dated:  August 24, 2017

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officer to be effective as of the day and year written above.

LENDER:

QUARTERSPOT INC.

Signature:

Full Name:   Lance Emanuel

Title:            President and Chief Operating Officer

## Assignment of Notes and Allonges

This Assignment of Notes and Allonges ("Assignment") is attached to and made a part of each promissory note identified on Schedule I attached hereto (the "Notes"), dated as of August 24, 2017 and made payable to the order of Direct Lending Income Fund, LP.

For value received, the undersigned hereby indorses, transfers and assigns each Note as follows:

Pay to the order of DLI Assets Bravo, LLC, its successors, participants and assigns, unconditionally, without recourse and without representation or warranty, expressed or implied.

Dated: August 24, 2017

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officer to be effective as of the day and year written above.

Direct Lending Income Fund, L.P.

By:

Name:   Brendan Ross

Title:   Chief Executive Officer

PLAINTIFF'S EXHIBIT



## PERSONAL GUARANTY

This Personal Guaranty, (the "Guaranty") is made by _____Graciela Williams_____ , (hereinafter "Guarantor" or "you") for the benefit of QuarterSpot, Inc. and its successors and assigns ("QuarterSpot")

A. _____TRI-STAR EVICTIONS_____ , (the "Borrower"), has entered into that certain Business Loan Agreement, dated _____May 24, 2017_____ (as amended, modified, or supplemented from time to time, the "Loan Agreement"), with QuarterSpot.

B. Under the Loan Agreement, Borrower committed to obtain a Loan from QuarterSpot if the Loan is funded.

C. Guarantor is a principal or owner of the Borrower and will derive direct and indirect economic benefit from the Loan made to the Borrower.

D. QuarterSpot requires that the Guarantor execute and deliver this Guaranty as a condition to QuarterSpot entering into the Loan Agreement.

To induce QuarterSpot to enter into the Loan Agreement and to make the Loan, Guarantor agrees as follows:

**SECTION 1 – PERSONAL GUARANTY.** Guarantor jointly and severally (if more than one), absolutely and unconditionally guarantees the prompt payment to QuarterSpot of the Loan Amount and any other amounts due pursuant to the Loan Agreement. Guarantor further agrees to repay the Loan Amount on demand, without requiring QuarterSpot first to enforce payment against the Borrower. This is a guarantee of payment and not of collection. This is an absolute, unconditional, primary, and continuing obligation and will remain in full force and effect until the first to occur of the following: (a) the Loan Amount and any other amounts due have been indefeasibly paid in full, and QuarterSpot has terminated this Guaranty, or (b) 30 days after the date on which written notice of revocation is actually received and accepted by QuarterSpot. Guarantor represents and warrants that Guarantor is a legal resident of the United States of America. Guarantor waives all notices to which Guarantor might otherwise be entitled by law, and also waives all defenses, legal or equitable, otherwise available to Guarantor. Guarantor assumes responsibility for keeping informed of the financial condition of Borrower and of each other guarantor of and of all other circumstances bearing on the risk of nonpayment of the Loan Amount that diligent inquiry would reveal. QuarterSpot will have no duty to advise Guarantor of information known to QuarterSpot regarding any condition or circumstance bearing on such risks. If QuarterSpot in its sole discretion undertakes to provide information to Guarantor, QuarterSpot will be under no obligation to (a) undertake any investigation; (b) disclose any information that, pursuant to accepted or reasonable banking or commercial finance practices, QuarterSpot wishes to maintain confidential; or (c) make any other or future disclosures of such information or any other information to Guarantor.  Until the Loan Amount and any other amounts due pursuant to the Loan Agreement, and all obligations of Guarantor under this Guaranty have been fully and indefeasibly paid, in cash, and performed, Guarantor will have no right of subrogation, and Guarantor waives any right to enforce any remedy that QuarterSpot now has or may subsequently have against Borrower or any other person, and waives any benefit of, or any right to participate in, any security interest now or subsequently held by QuarterSpot.

**SECTION 2 – SECURITY INTEREST.** If Guarantor is a business entity and not an individual, Guarantor hereby grants QuarterSpot a continuing security interest in and to the "Collateral" as described below to secure payment and performance of the Note. The Collateral includes the following property that Guarantor now owns or shall acquire or create immediately upon the acquisition or creation thereof: (a) all tangible and intangible property of Guarantor, including, but not limited to all cash and cash equivalents, deposit accounts, credit card receivables, chattel paper, documents, equipment, general intangibles, instruments, inventory, equipment, investment property (including certificated and uncertificated securities, securities accounts, securities entitlements, commodity contracts and commodity accounts), letter of credit rights, commercial tort claims and as-extracted collateral (as those terms are defined

in Article 9 of the Uniform Commercial Code ("UCC") in effect from time-to-time in the State of Virginia); (b) all patents, patent applications, trademarks, trade names, service marks, logos, copyrights, and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and U.S. Copyright Office and all renewals, reissues and extensions thereof (collectively "IP"), together with any written agreement granting any right to use any IP; and (c) all accessions, attachments, accessories, parts, supplies and replacements, products, proceeds and collections with respect to the items described in (a) and (b) above, as those terms are defined in Article 9 of the UCC and all records and data relating thereto.

**SECTION 3 – FINANCING STATEMENTS.** If Guarantor is a business entity and not an individual, then QuarterSpot or its designated representative may file any financing statement, lien entry form or other document against such Guarantor or its property that QuarterSpot or QuarterSpot's designated representative requires to perfect, amend or continue QuarterSpot's security interest in the Collateral. Any such Guarantor agrees to cooperate with QuarterSpot and QuarterSpot's designated representative as may be necessary to accomplish said filing and to do whatever QuarterSpot or QuarterSpot's designated representative deems necessary to protect QuarterSpot's security interest in the Collateral.

**SECTION 4 – INSPECTION.** During an examination of the Borrower's business, QuarterSpot's designated representatives may photograph Guarantor on the business' premises unless Guarantor notifies QuarterSpot that Guarantor does not authorize QuarterSpot to photograph Guarantor. QuarterSpot may obtain testimonials from Guarantor, including testimonials on the intended or actual use of the Loan. Guarantor grants QuarterSpot the irrevocable and permanent right to display and share any photograph or testimonial taken in all forms and media with the general public. Guarantor agrees to release QuarterSpot from any claims that may arise from the use of any photograph or testimonial, including any claims of defamation, invasion of privacy or infringement of moral rights, copyright or rights of publicity.

**SECTION 5 – FINANCIAL INFORMATION AND REEVALUATION OF CREDIT.** Guarantor hereby authorizes QuarterSpot to obtain financial data, background checks and credit reports, including consumer credit reports, in Guarantor's name from third parties at any time in connection with Borrower's loan application and for any update, renewal, extension of credit or other lawful purpose thereon. Upon Guarantor's request, QuarterSpot shall inform Guarantor of the credit bureau's name and address from which QuarterSpot obtained a credit report. Guarantor agrees to submit current financial information or a new loan application, at any time upon QuarterSpot's request.

**SECTION 6 – COLLECTION & REPORTING OF DELINQUENT LOANS.** QuarterSpot reserves the right to report QuarterSpot's credit experience with any Guarantor to third parties as permitted by law. You are hereby notified that a negative credit report reflecting on Guarantor's credit record may be submitted to a credit reporting agency if the Guarantor fails to fulfill the terms of the credit obligations hereunder. Guarantor agrees to pay all costs of collecting any delinquent payments, including reasonable attorneys' fees, as permitted by applicable law.

**SECTION 7 – DEFINITIONS.** All capitalized terms used but not defined in this Guaranty have the meanings attributed to them in the Loan Agreement.

**SECTION 8 – CONSENT FOR ELECTRONIC SIGNATURES.**

a) Guarantor consents to using and accepting electronic signatures, records, and disclosures ("E-Consent"). This E-Consent notifies you of your rights when receiving disclosures, notices and information from QuarterSpot. By clicking "Sign-up," "I Agree," "Next," or "Submit," or other links assenting to our terms or other links assenting to our terms, you acknowledge you received this E-Consent and that you consent to using electronic signatures, records, and disclosures. Additionally, by clicking "Sign-up," "I Agree," "Next," or "Submit," or other links assenting to our terms, you consent to conduct transactions by using electronic disclosures, electronic records, and contract documents ("Disclosures"). You should keep us informed of any change in your electronic address or mailing address. You may update such information by logging into the website and providing the updated information. You may also send us your written update by mail to our address above.

b) BY CLICKING "SIGN-UP," "I AGREE," "NEXT," OR "SUBMIT," OR OTHER LINKS ASSENTING TO OUR TERMS YOU ACKNOWLEDGE YOU HAVE READ THIS INFORMATION ABOUT ELECTRONIC SIGNATURES, RECORDS, DISCLOSURES,

AND DOING BUSINESS ELECTRONICALLY.  YOU CONSENT TO USING ELECTRONIC SIGNATURES, HAVING ALL DISCLOSURES PROVIDED OR MADE AVAILABLE TO YOU IN ELECTRONIC FORM AND TO DOING BUSINESS WITH US ELECTRONICALLY.  YOU ALSO ACKNOWLEDGE THAT YOUR CONSENT TO ELECTRONIC DISCLOSURES IS REQUIRED FOR BORROWER TO RECEIVE ONLINE COMMERCIAL FINANCIAL SERVICES FROM US OVER THE INTERNET.

SECTION 9 – APPLICABLE LAW AND WAIVER OF JURY TRIAL. This Guaranty shall be construed in accordance with the laws of the Commonwealth of Virginia, and shall inure to the benefit of QuarterSpot. To the extent not prohibited by applicable law, Guarantor waives the right to a trial by jury of any claim or cause of action based upon, arising out of or related to this Guaranty, the Loan Agreement and all other documentation related to the Loan, in any legal action or proceeding.

Section 10 – ARBITRATION. Any claim, allegation or dispute arising out of or relating to this Guaranty, including without limitation, and claim, allegation or dispute regarding the terms, scope, interpretation, construction, performance, breach, termination or enforceability of this Guaranty, may be, at the election of either party, submitted to and resolved by mandatory binding arbitration, to take place in the State of Virginia, to take place with a reasonable time after the making of such a demand by a party, such time period not to exceed ninety (90) days after request by the requesting party. Arbitration under this Guaranty shall take place before and be administered by JAMS. Except as limited by this Guaranty, the proceeding shall be conducted under the Expedited Procedures of JAMS' rules and procedures. The arbitrator presiding over the proceeding shall be selected under JAMS' procedures, and shall base its determinations and awards under Virginia law. Any award issued by the arbitration may be entered and enforced in any court having jurisdiction in accordance with SECTION 38 of this Guaranty. The costs associated with the arbitration charged by JAMS shall be split evenly among the parties to the arbitration, although QuarterSpot will consider a good faith request by you for QuarterSpot to pay the costs of arbitration. Arbitration may only be pursued in an individual capacity, not as a class or representative member of more than one individual. The arbitrator shall not have the power or be authorized to consolidate more than one individual or entity's claim in arbitration proceeding with any other person or entity's other arbitration proceeding, and may not otherwise authorize or preside over any claim purporting to represent a class or more than one individual or entity. This arbitration section is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

IN WITNESS WHEREOF, the Guarantor has duly executed this Guaranty as of the date first below written.

Owner Name: _____ Graciela Williams _____

Date: _____ May 24, 2017 _____

Signature: _Graciela Williams_ _____